# United States Court of Appeals
# for the Federal Circuit

---

CLEAR WITH COMPUTERS, LLC,

*Plaintiff-Appellant,*

*v.*

DICK'S SPORTING GOODS, INC., FORTY NINERS FOOTBALL COMPANY, LLC, HELLY HANSON (U.S.) INC., LEVI STRAUSS & CO., NFL ENTERPRISES LLC, SPANX, INC., AND MLB ADVANCED MEDIA, L.P.,

*Defendants-Appellees,*

*and*

THE FINISH LINE, INC.,

*Defendant-Appellee,*

*and*

HUGO BOSS FASHIONS, INC.,

*Defendant-Appellee,*

*and*

TORY BURCH LLC,

*Defendant-Appellee.*

---

*Appeals from the United States District Court for the Eastern District of Texas in Nos. 6:12-cv-00674-LED, 6:12-cv-00675-LED, 6:12-cv-00867-LED, 6:12-cv-00868-LED, 6:12-cv-00945-LED, 6:12-cv-00947-LED, 6:12-cv-00948-LED, 6:12-cv-00949-LED, 6:12-cv-00950-LED, 6:12-cv-00951-LED, Judge Leonard Davis.*

---

**BRIEF FOR APPELLEES THE FINISH LINE, INC. DICK'S SPORTING GOODS, INC., FORTY NINERS FOOTBALL COMPANY LLC, HELLY HANSEN (U.S.) INC., LEVI STRAUSS & CO., NFL ENTERPRISES LLC, SPANX, INC., MLB ADVANCED MEDIA L.P., HUGO BOSS FASHIONS, INC., and TORY BURCH LLC**

TODD G. VARE
BARNES & THORNBURG LLP
11 S. Meridian Street
Indianapolis, IN 46204
(317) 231-7735
*Attorney for Appellee*
*The Finish Line, Inc.*

MARK P. WINE
WILL H. MELEHANI
ORRICK HERRINGTON
    & SUTCLIFFE LLP
2050 Main St., Suite 1100
Irvine, CA 92614
(949) 567-6700
*Attorneys for Appellees*
*Dick's Sporting Goods, Inc.,*
*Forty Niners Football Company LLC,*
*Helly Hansen (U.S.) Inc., Levi Strauss*
*& Co., NFL Enterprises LLC, Spanx,*
*Inc., and MLB Advanced Media L.P.*

*COUNSEL CONTINUED INSIDE*

COUNSEL CONTINUED

MATTHEW M. LUBOZYNSKI
KILPATRICK TOWNSEND
    & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
(404) 815-6500

*Attorney for Appellee*
*Tory Burch LLC*

KEVIN W. KIRSCH
JOHN M. MUELLER
BAKER HOSTETLER LLP
312 Walnut Street
Suite 3200
Cincinnati, OH 45202-4074
(513) 929.3413

BARRY E. BRETSCHNEIDER
BAKER HOSTETLER LLP
Washington Square
Suite 1100
1050 Connecticut Avenue, NW
Washington, D.C. 20036-5304
(202) 861.1500

*Attorneys for Appellee*
*Hugo Boss Fashions, Inc.*

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel for defendant-appellee The Finish Line, Inc. certifies the following:

1. We represent The Finish Line, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented: The Finish Line, Inc.

3. The Finish Line, Inc. has no parent entity and no publicly held entity owns 10 percent or more of The Finish Line, Inc.'s stock.

4. The following law firms and partners or associates appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

> BARNES & THORNBURG LLP
> Todd G. Vare
>
> CAPSHAW DERIUEX, LLP
> S. Calvin Capshaw
> Elizabeth L. DeRieux
> D. Jeffrey Rambin

Dated: September 9, 2014          Respectfully submitted,

> /s/ Todd G. Vare
> Todd G. Vare
> Barnes & Thornburg LLP
> *Attorney for The Finish Line, Inc.*

i

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel of record for Defendant-Appellees Dick's Sporting Goods, Inc., Forty Niners Football Company LLC, Helly Hansen (US), Inc., Levi Strauss & Co., Spanx, Inc., MLB Advanced Media L.P., and NFL Enterprises LLC certifies the following:

1.    The full names of the parties we represent in this case are:

Dick's Sporting Goods, Inc.

Forty Niners Football Company LLC

Helly Hansen (US), Inc.

Levi Strauss & Co.

Spanx, Inc.

MLB Advanced Media L.P.

NFL Enterprises LLC.

2.    The names of the real parties represented by us are: GSI Commerce Solutions, Inc. (which is a wholly-owned subsidiary of GSI Commerce, Inc. d/b/a eBay Enterprise, which is a wholly-owned subsidiary of eBay Inc.) and Fanatics Retail Group North, Inc.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by us are:

NFL Ventures L.P. is the parent company of NFL Enterprises LLC.

4.    The names of all law firms and the partners or associates that appeared for the parties now represented by us in the agency or are expected to appear in this Court, are:

Orrick, Herrington & Sutcliffe, LLP:  Mark P. Wine, Thomas J. Gray (no longer with Orrick) Benjamin S. Lin, Will Melehani and Michael C. Chow; Ritcheson Lauffer & Vincent: Lance Vincent; Findlay Craft LLP: Brian Craft and Eric Findlay

Dated: _____9/9/14_____          Respectfully submitted,

By: _/s/ Mark P. Wine_____
        Mark P. Wine
        *Attorney for Dick's Sporting*
        *Goods, Inc., Forty Niners*
        *Football Company LLC, Helly*
        *Hansen (US), Inc., Levi*
        *Strauss & Co., Spanx, Inc.,*
        *MLB Advanced Media L.P.,*
        *and NFL Enterprises LLC.*

iii

# CERTIFICATE OF INTEREST

Counsel for Tory Burch LLC certifies the following:

1.  The full name of every party represented by us is:

    Tory Burch LLC

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

    N/A

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us are:

    N/A

4.  The names of all law firms and the partners or associates that appear for the party now represented by me in the trial court or agency or are expected to appear in this court are:

    Mitchell G. Stockwell, Matthew M. Lubozynski and Wab P. Kadaba of Kilpatrick Townsend & Stockton LLP, 1100 Peachtree Street, Ste. 2800, Atlanta, Georgia 30309

    Allen F. Gardner and Michael E. Jones of Potter Minton P.C.

Dated: September 9, 2014                    /s/Matthew M. Lubozynski
                                            Matthew M. Lubozynski

iv

# CERTIFICATE OF INTEREST

Counsel for Hugo Boss Fashions, Inc. certifies the following:

1.    The full name of every party represented by us is:

      Hugo Boss Fashions, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

      N/A

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us are:

      Hugo Boss USA, Inc.

4.    The names of all law firms and the partners or associates that appear for the party now represented by me in the trial court or agency or are expected to appear in this court are:

      Kevin W. Kirsch, Barry E. Bretschneider, and John M. Mueller of Baker Hostetler LLP; Harry L. Gillam of Gillam & Smith

Dated:  September 9, 2014          /s/John M. Mueller
                                   John M. Mueller

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST THE FINISH LINE, INC. ......................i

CERTIFICATE OF INTEREST DICK'S SPORTING GOODS, INC., et al. ...................................................................................................ii

CERTIFICATE OF INTEREST TORY BURCH LLC.............................iv

CERTIFICATE OF INTEREST HUGO BOSS FASHIONS, INC. ...........v

TABLE OF AUTHORITIES.................................................................viii

STATEMENT OF RELATED CASES ......................................................x

INTRODUCTION .....................................................................................1

STATEMENT OF THE ISSUE ................................................................2

STATEMENT OF THE CASE .................................................................2

   A.  The Asserted Claims Of The '015 Patent .........................................2

   B.  The Claimed Invention Is Directed To Facilitating Sales Of Products In Existing Inventory ........................................................4

      1. Overview Of The Background Of The Claimed Invention..........4

      2. The Claims Recite "A Configuration Engine Of A Computer System" To Facilitate The Sale Of Products From Inventory ............................................................................5

SUMMARY OF ARGUMENT ..................................................................9

ARGUMENT ..........................................................................................10

   I.  LEGAL STANDARD APPLICABLE TO DETERMINATION OF PATENT ELIGIBILITY UNDER 35 U.S.C. § 101 ..................10

II. THE ASSERTED CLAIMS OF THE '015 PATENT ARE
INVALID UNDER 35 U.S.C. § 101 AS BEING DIRECTED
TO PATENT-INELIGIBLE SUBJECT MATTER ........................ 14

    A. The Claims Of The '015 Patent Are Drawn To An Abstract
Idea ............................................................................................... 14

    B. The Claims Do Not Recite Any "Inventive Concept"
Sufficient To Transform The Abstract Idea To Patent-
Eligible Subject Matter ............................................................... 18

    C. CWC's Attacks On The District Court's Analysis Are
Without Merit .............................................................................. 24

        1. The District Court Correctly Applied The Two-Step
Framework Established In *Mayo* And Confirmed By
*Alice* ...................................................................................... 24

        2. The District Court's Finding That A Human Could
Perform The Mental Steps Of The Claim With Pen And
Paper Is Consistent With *Alice* And A Correct
Application Of This Court's Precedent ................................. 25

        3. The District Court Correctly Rejected CWC's
Characterization Of The "Configuration Engine" As
"Specialized" ......................................................................... 27

        4. The District Court Correctly Found That The '015
Patent Claims Effectively Preempt The Idea Of Selling
Products From Inventory ...................................................... 29

    D.   The Dependent Claims Recite Nothing That Adds An
"Inventive Concept" .................................................................... 32

CONCLUSION ........................................................................................ 34

CERTIFICATE OF SERVICE ................................................................. 36

CERTIFICATE OF COMPLIANCE ........................................................ 38

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.,*
    728 F.3d 1336 (Fed. Cir. 2013) ............................................................ 28

*Alice Corp. Pty. Ltd. v. CLS Bank International,*
    573 U.S. ⸺, 134 S.Ct. 2347, ⸺ L.Ed.2d ⸺ (2014) ........... *passim*

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.,*
    133 S.Ct. 2107 (2013) ........................................................................ 10

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada U.S.),*
    687 F.3d 1266 (Fed. Cir. 2012) .......................................... 12, 19, 23, 26

*Bilski v. Kappos,*
    561 U.S. 593 (2010) ............................... 11, 14, 15, 16, 18, 19, 27, 30, 32

*buySAFE, Inc. v. Google, Inc.,*
    No. 2013-1575, slip op.(Fed. Cir. Sept. 3, 2014) ........................ 1, 15, 32

*CyberSource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011) .............................. 11, 17, 19, 20, 21, 33

*Dealertrack, Inc. v. Huber,*
    674 F.3d 1315 (Fed. Cir. 2012) ...................................................... 19, 20

*Gottschalk v. Benson,*
    409 U.S. 63 (1972) .............................................................. 10, 11, 26, 27

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*
    132 S.Ct. 1289 (2012) ................................................................... *passim*

*MySpace, Inc. v. GraphOn Corp,*
    672 F.3d 1250 (Fed. Cir. 2012) .......................................................... 33

*Parker v. Flook,*
    437 U.S. 584  (1978) .......................................................................... 19

*Planet Bingo, LLC v. VKGS LLC,*
    961 F.Supp. 2d 840 (W.D. Mich. 2013) ................................................ 12

*Planet Bingo, LLC v. VKGS LLC,*
    No. 2013-1663, slip op.(Fed. Cir. Aug. 26, 2014) ........... 1, 11, 19, 20, 26

**Statutes**

35 U.S.C. § 101 ................................................ 1, 2, 9, 10, 14, 23, 24, 27, 33

## STATEMENT OF RELATED CASES

There have been no other appeals before this or any other appellate court arising from the civil action that gave rise to this appeal.

## INTRODUCTION

The district court correctly applied Supreme Court and Federal Circuit precedent to find that the asserted claims of U.S. Patent 8,266,015 were invalid under 35 U.S.C. § 101. Using the two-step framework previously established by the Supreme Court and recently affirmed by that Court in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. ——, 134 S.Ct. 2347, 2356, —— L.Ed.2d —— (2014), the district court found that (1) the claims were directed to the abstract idea of selling products available in inventory; and (2) the claimed generic computer implementation failed to provide any meaningful limitation, or inventive concept, that transformed the abstract idea into patent-eligible subject matter.

Like this Court's recent decisions in *buySAFE, Inc. v. Google, Inc.*, No. 2013-1575, slip op. at 2, 9 (Fed. Cir. Sept. 3, 2014) and *Planet Bingo, LLC v. VKGS LLC*, No. 2013-1663, slip op. at 2 (Fed. Cir. Aug. 26, 2014) (non-precedential), a straightforward application of *Alice* confirms the district court's holding as correct. This Court should affirm the district court's grant of judgment on the pleadings.

## STATEMENT OF THE ISSUE

Whether patent claims directed to a method of selling a product from existing inventory through a generic computer implementation are invalid under 35 U.S.C. § 101 as being drawn to an impermissible abstract idea.

## STATEMENT OF THE CASE

Defendants-Appellees agree with Clear With Computers, LLC's ("CWC") Statement of the Case except for the statement: "Defendant-Appellees did not agree to a remand, leaving this Court to apply *Alice* in the first instance." Br. at 3. Defendants-Appellees submit that the district court below applied the same two-step analysis set forth by the Supreme Court in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.* 132 S.Ct. 1289 (2012), which was confirmed by the Supreme Court's decision in *Alice*, 134 S.Ct. at 2355.

### A.    The Asserted Claims Of The '015 Patent

The '015 patent relates to a computer system "which facilitates sales from an inventory of the selling entity." A373, col. 1:14-16. CWC asserts infringement against Defendants of method claims 1-4 and 10-11.

Claim 1 of the '015 patent, upon which all other asserted claims depend, states:

> A method comprising:
>
> receiving, at a configuration engine of a computer system, a query regarding a product included in an inventory;
>
> determining, by the configuration engine, (i) a plurality of customization options associated with the product, and (ii) which customization options of the plurality of customization options are included in the inventory;
>
> preparing, by the configuration engine, a list of the customization options determined to be included in the inventory; and
>
> providing, by the configuration engine, the list of the customization options for presentation.

A379, col. 13: 35–47. Claim 2 requires that the list of customization options be "presented by way of a user interface." *Id.*, col. 13:48–50. Claim 3 requires "communication to a remote computer system across a communication network." *Id.*, col. 13:51–53. Claim 4 requires communication from a server to the client via the Internet. *Id.*, col. 13:54–57. Claim 10 requires that the user interface be displayed on a remote computer. *Id.*, col. 14:15–18. Finally, Claim 11 requires that the

user interface be displayed to a client via the Internet. *Id.*, col. 14:19–22.[1]

## B. The Claimed Invention Is Directed To Facilitating Sales Of Products In Existing Inventory

### 1. Overview Of The Background Of The Claimed Invention

In the Background of the Invention section, the patent acknowledges that "[o]ver the past several years computers have been increasingly used in the sales industry." A373, col. 1:20-21. The patent notes that "[t]he speed and processing power of computers allow tasks which were previously quite time consuming to be accomplished almost instantaneously." *Id.*, col. 1:24-26. Among other things, "[p]roduct information may be stored in a computer readable database, for example, and may be retrieved using a search engine." *Id.*, col. 1:28-30.

The patent acknowledges there are at least two ways of selling products. "In many instances, a sales representative will have the option of selling a product either from an existing inventory or by ordering the product customized to the particular needs and desires of the customer." *Id.*, col. 1:36-39. The patent also acknowledges that

---

[1] CWC does not argue on appeal that any dependent claim recites an inventive concept distinguishing it from independent claim 1.

computers have been used to facilitate selling products, *id.*, col. 1:39-40,

and describes the following example:

> [T]he sales representative, using a basic inventory database
> and search engine, may search the database for products in
> the inventory which have a desired component,
> characteristic, or product number. Such a system will
> typically generate a list of products available in the
> inventory which satisfy the search criteria.

*Id.*, col. 1:40-46.

### 2.    The Claims Recite "A Configuration Engine Of A Computer System" To Facilitate The Sale Of Products From Inventory

According to the patent, "a configuration engine of a computer

system" is claimed to facilitate the sale of products from the inventory

of a selling entity. The claimed "computer system" is used by a sales

representative to facilitate the sale of a product to a customer. A374,

col. 4:18-20. According to the patent, "any type of computer system may

be used." *Id.*, col. 4:15-16. Figure 1 depicts several general purpose

computers in this "computer system." A364. Furthermore, in each

disclosed embodiment, the patent identifies a general purpose

"computer system" that is used to facilitate sales from inventory:

- "In one embodiment, a computer system implemented method is used to facilitate a sale of a product from an inventory of a selling entity." A373, col. 2:1-3.

- "In another embodiment, a computer system having a memory arrangement and at least one processing unit coupled to the memory arrangement is used to facilitate sales from inventory." *Id.*, col. 2:19-22.

- "In still another embodiment, in a memory arrangement of a computer system product inventory information related to the inventory of the selling entity and configuration information related to selling entity products offered for sale by the selling entity are stored." *Id.*, col. 2:33-37.

- "In another embodiment, a computer system is used to facilitate a sale of a product from an inventory of a selling entity." *Id.*, col. 2:48-50.

The claimed "computer system" is described as having a processor and memory. A375, col. 5:58-60. Figure 2 below shows the arrangement of the claimed "computer system" that includes a "processing" arrangement (201) and a "memory" arrangement (203).



FIG. 2

A365, Fig. 2. The "processing" arrangement is described as having a

processor (205), read-only-memory (ROM) (207), random access memory

(RAM) (208), input/output (I/O) (209), and a configuration engine (211).

A375, col. 5:55-6:3; A365, Fig. 2. The memory arrangement may include

various data storage elements. *Id.*, col. 6:9-13. Any memory

arrangement can be used. *Id.*, col. 6:20-22.

According to the patent, the "configuration engine" (depicted by

number 211 in Figure 2) may represent a process implemented on the

processing unit or may further include specific additional processing

hardware. *Id.*, col. 6:5-8. For purposes of Defendants' motion for

judgment on the pleadings, the district court applied CWC's proposed construction of the claim term "configuration engine" as "computer hardware and/or software, including one or more solvers, that access information from a database to configure a product category and/or options information for a product." A11.

The patent describes the advantage of the alleged invention as "facilitating" the sales of products available in inventory. According to the patent, "[t]he speed and processing power of computers allow tasks which were previously quite time consuming to be accomplished almost instantaneously." A373, col. 1:24-26. The patent further states that the alleged invention is "advantageous" to the manual process performed by a human being where "a sales representative configures a product or service for sale by selecting a number of available features or options to generate a solution for the customer consistent with the customer's interest in the product." A374, col. 3:40-45. The claimed "computer system" allows "a sales representative to review, select, and prepare a solution for the customer, which includes a particular product offered for sale by the sales representative, based on the needs and desires of the customer." A375, col. 6:23-27.

8

The patent states that the alleged invention is unlimited in its application to selling products from inventory—i.e., the process is described as capable of being used in any "environment where selling products from an existing inventory may be desired." A374, col. 3:38-40.

## SUMMARY OF ARGUMENT

Fundamental concepts, by themselves, are ineligible abstract ideas. *Alice*, 134 S.Ct. at 2356. Although an application of an abstract idea may at times be deserving of patent protection, a claim reciting an abstract idea does not become eligible merely by using a computer to accelerate an ineligible mental process. CWC's claimed method is a computerized iteration of the basic concept of selling products from inventory. Because the claims asserted by CWC disclose no technological advancement, but instead simply recite the use of a generic computer to implement a well-known and widely-practiced technique for organizing information (*i.e.*, what products are available in inventory) to facilitate selling, they fall outside of the ambit of 35 U.S.C. § 101.

## ARGUMENT

## I.   LEGAL STANDARD APPLICABLE TO DETERMINATION OF PATENT ELIGIBILITY UNDER 35 U.S.C. § 101

In *Alice Corp. Pty. Ltd. v. CLS Bank International*, the Supreme

Court unanimously confirmed the two-step test for determining patent

eligibility under Section 101 that it had previously set forth in *Mayo*

*Collaborative Services v. Prometheus Laboratories, Inc.*:

> First, we determine whether the claims at issue are directed
> to one of those patent-ineligible concepts. If so, we then ask,
> "[w]hat else is there in the claims before us."

*Alice*, 134 S.Ct. at 2355 (quoting *Mayo*, 132 S.Ct. at 1296-97) (internal

citation omitted).

Regarding the first step, the Supreme Court reiterated that

"[l]aws of nature, natural phenomena, and abstract ideas are not

patentable." *Id.* at 2354 (quoting *Ass'n for Molecular Pathology v.*

*Myriad Genetics, Inc.*, 133 S.Ct. 2107, 2116 (2013)). Speaking

specifically to the issue of whether a claim is directed to an abstract

idea, the Court emphasized "the longstanding rule that '[a]n idea itself

is not patentable.'" *Id.* at 2355 (quoting *Gottschalk v. Benson*, 409 U.S.

63, 67 (1972).

10

The Court explicitly stated that it did not intend to define the precise contours of an abstract idea; however, the Court had no problem finding that the claimed method of intermediated settlement in *Alice* was "a fundamental economic practice long prevalent in our system of commerce," *id.* at 2356, and, thus, "squarely within the realm of 'abstract ideas' as [the Court has] used that term." *Id.* at 2357. The Court found no meaningful distinction between the concept of intermediated settlement and the concept of risk hedging that the Court in *Bilski v. Kappos*, 561 U.S. 593 (2010) had previously held—also unanimously—to be an abstract idea.

In addition, *Alice* did not alter the fact that mere mental processes are also unpatentable abstract ideas. *Benson*, 409 U.S. at 67. Likewise, this Court has repeatedly held that "methods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011); *see also Planet Bingo*, No. 2013-1663, slip op. at 4 (ruling that claims were directed to an abstract idea because they "consist[ed] solely of mental steps which can be carried out by a human using a pen and paper") (quoting *Planet Bingo,*

*LLC v. VKGS LLC*, 961 F.Supp. 2d 840, 851 (W.D. Mich. 2013))). Nor did *Alice* reverse this Court's precedent that "[u]sing a computer to accelerate an ineligible mental process does not make that process patent-eligible." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada U.S.)*, 687 F.3d 1266, 1279 (Fed. Cir. 2012).

If a claim is directed to an abstract idea, the Supreme Court in *Alice* confirmed the second step set forth in *Mayo* is to consider whether the claim shows an "inventive concept" sufficient to transform the abstract idea into patent-eligible subject matter. *Alice*, 134 S.Ct. at 2357 (quoting *Mayo*, 132 S.Ct. at 1294, 1298). Regarding this second step, the Court elaborated:

> To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an "inventive concept"—i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."

*Id.* at 2355 (internal citations omitted) (quoting *Mayo*, 132 S.Ct. at 1294, 1297-98). The Court reiterated that:

> A claim that recites an abstract idea must include "additional features" to ensure "that the claim is more than a

drafting effort designed to monopolize the abstract idea ….”
[which] requires “more than simply stating the abstract idea
while adding the words ‘apply it.’”

*Id.* at 2357 (quoting *Mayo*, 132 S.Ct. at 1297, 1294).

*Alice* also confirmed that “[t]he introduction of a computer into the

claims does not alter the analysis at *Mayo* step two.” *Id.* at 2357. The

Court emphasized:

> [T]he mere recitation of a generic computer cannot
> transform a patent-ineligible abstract idea into a patent-
> eligible invention. Stating an abstract idea “while adding the
> words ‘apply it’ ” is not enough for patent eligibility. Nor is
> limiting the use of an abstract idea “ ‘to a particular
> technological environment.’ ” Stating an abstract idea while
> adding the words “apply it with a computer” simply
> combines those two steps, with the same deficient result.
> Thus, if a patent’s recitation of a computer amounts to a
> mere instruction to “implement” an abstract idea “on … a
> computer,” that addition cannot impart patent eligibility.

*Id.* at 2358 (internal citations omitted). The Court reasoned: “Given the

ubiquity of computers, wholly generic computer implementation is not

generally the sort of ‘additional feature’ that provides any ‘practical

assurance that the process is more than a drafting effort designed to

monopolize the abstract idea itself.’” *Id.* (internal citations omitted). A

unanimous Court in *Alice* concluded that there was no “inventive

concept” in the claimed intermediated settlement steps where “each

step does no more than require a generic computer to perform generic

computer functions." *Id.* at 2359.

## II. THE ASSERTED CLAIMS OF THE '015 PATENT ARE INVALID UNDER 35 U.S.C. § 101 AS BEING DIRECTED TO PATENT-INELIGIBLE SUBJECT MATTER

### A. The Claims Of The '015 Patent Are Drawn To An Abstract Idea

The asserted claims of the '015 patent are drawn to the abstract

idea of selling goods available in inventory. The Supreme Court in *Alice*

stated it "need not labor to delimit the precise contours of the 'abstract

ideas' category …. It is enough to recognize that there is no meaningful

distinction between the concept of risk hedging in *Bilski* and the

concept of intermediated settlement [in *Alice*]." *Alice*, 134 S.Ct. at 2357.

The concept of risk hedging in *Bilski* and the concept of intermediated

settlement in *Alice* were both found to be "fundamental economic

practice[s] long prevalent in our system of commerce." *Id.* at 2356

(quoting *Bilski*, 561 U.S. at 611).

Likewise, there is no meaningful distinction between the concept

of selling goods from inventory at issue here and the abstract concepts

of risk hedging and intermediated settlement in *Bilski* and *Alice*,

respectively. Selling goods from inventory is at least equally "a

fundamental economic practice long prevalent in our system of commerce" as the economic practices of risk hedging and intermediated settlement. It is beyond question that selling goods from existing inventory is commercial transaction of long lineage. *See buySAFE*, No. 2013-1575, slip op. at 9 (finding claims to the concept of a "transaction performance guaranty," like the concepts of risk hedging and intermediated settlement, was a "long-familiar commercial transaction[]" that was "beyond question of ancient lineage"). The '015 patent itself acknowledges inventory-based sales as one of two basic ways of selling goods (the other being custom-ordered sales). A373, col. 1:36-39; *see also id.*, col. 47-62.

CWC unconvincingly attempts to distinguish its patent claims from those in *Bilski* and *Alice*, arguing that its claim "recites a process by which a constrained list of customization options associated with a product is prepared and provided for presentation (responsive to a query regarding the product)." Br. at 15. According to CWC, its patent is directed to selling goods out of inventory, as opposed to taking custom orders. Br. at 16.

CWC's argument is predicated upon an irrelevant distinction and ignores the unassailable point that *both* ways of selling goods—whether out of inventory or by custom ordering—are nothing more than abstract ideas. Both are longstanding, fundamental economic practices of the sales industry. Indeed, CWC admits to this Court that selling products out of inventory is a "desirable economic practice." Br. at 16.

CWC distinguishes selling from inventory as more desirable than selling custom-ordered products (which CWC alleges became the norm). Br. at 16. This argument, however, only strengthens the conclusion that the '015 patent claims are directed to an abstract idea. Taking CWC at its word that selling configured products out of existing inventory is preferred over selling custom orders, it is evident that the '015 patent claims "a building block of the modern economy," and "would risk disproportionately tying up the use of the underlying ideas." *Alice*, 134 S.Ct. at 2354, 2356 (internal quotes omitted).

Like the patent holders did in *Bilski* and *Alice*, CWC also argues that the claims of the '015 patent do not recite any mathematical formula. Br. at 16. The Supreme Court rejects exactly this "talismanic significance" that CWC seeks to assign to a mathematical formula.

*Alice*, 134 S.Ct. at 2357 (citing *Bilski*, 561 U.S. at 611). Rather, in both *Bilski* and *Alice*, the Court grounded its finding of an abstract idea in the fact that the claims were drawn to methods of organizing human activity and fundamental economic practices. *Id.* at 2357-58.

Moreover, CWC ignores this Court's precedent regarding the unpatentability of mental processes. *CyberSource*, 654 F.3d at 1371. As the district court properly recognized, the steps of the patent's claims are easily performed as mental processes, a fact that provides a separate sufficient basis for the conclusion that they are directed to a mere abstract idea. *Id.*

Here, the claims involve a series of steps instructing how to identify and list goods available in inventory—specifically: (a) *receiving* a query about a product included in an inventory; (b) *determining* (i) a plurality of customization options associated with that product, and (ii) which of those customization options are included in inventory; (c) *preparing* a list of the customization options included in the inventory; and (d) *providing* that list for presentation. In the context of retailers like Finish Line and Dick's Sporting Goods, customers walk into their stores every day and ask (query) the sales representative whether a

17

product is available in inventory. In response, the sales representative

determines what product options exist and whether they are in

inventory (typically, by checking the shelves or the backroom). The

sales representative then prepares a list of the available products in

inventory and presents them to the customer (whether verbally or by

bringing out various product options, e.g., shoes that meet the criteria).

These steps of the '015 patent claims are nothing more than methods of

organizing human activity like those in *Bilski* and *Alice*, and reflect a

fundamental economic practice of sales. The claims of the '015 patent

recite mental processes that are "squarely within the realm of 'abstract

ideas'" as made clear by the Supreme Court.

**B.    The Claims Do Not Recite Any "Inventive Concept"
        Sufficient To Transform The Abstract Idea To Patent-
        Eligible Subject Matter**

Turning to the second step in the framework of *Mayo*, as

confirmed in *Alice*, the method claims of the '015 patent merely require

a generic computer implementation of the abstract idea of selling goods

out of inventory. As the Supreme Court and this Court has made clear,

a generic computer implementation of an abstract idea fails to

transform that abstract idea into a patent-eligible invention. *See Alice*,

134 S.Ct. at 2358-59; *Mayo*, 132 S.Ct. at 1294, 1301; *Bilski*, 561 U.S. at 610-11; *Parker v. Flook*, 437 U.S. 584, 594 (1978); *see also CyberSource*, 654 F.3d at 1375; *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012); *Bancorp Servs.*, 687 F.3d at 1277-78; *Planet Bingo*, No. 2013-1663, slip op. at 6 (non-precedential).

CWC does not dispute that the claimed "computer system" is generic. The patent itself confirms that "any type of computer system may be used." A374, col. 4:15-16. A general purpose computer is not a meaningful limitation or inventive concept for an otherwise abstract idea. *Alice*, 134 S.Ct. at 2358-59; *CyberSource*, 654 F.3d at 1372, 1375 (a claim that requires a "computer to execute an algorithm that can be performed entirely in the human mind" is impermissibly abstract).

As it did below, CWC argues that the "configuration engine" is somehow a specialized device for performing the steps of the claim. Br. at 18-20. The district court correctly rejected CWC's argument, pointing out that a human using pen and paper could perform the same claimed steps as the "configuration engine," even using CWC's proposed construction. A13-14, order 8-9. Indeed, whether software or hardware, the claimed "configuration engine" does nothing more than perform

19

routine computer activities—*i.e.*, (a) receiving a query, (b) searching for data, (c) organizing that data into a list, and (d) presenting that list of data. Not only are these steps simply organized human activity, they can be performed without the use of a computer. A claim that simply instructs implementing the abstract idea on a computer is not a sufficient "inventive concept." *Alice*, 134 S.Ct. at 2358-59; *see also Mayo*, 132 S.Ct. at 1294; *CyberSource*, 654 F.3d at 1375-76; *Dealertrack*, 674 F.3d at 1333.

Considered as individual steps, the functions performed by the "configuration engine"—querying, determining data, listing data, and presenting data—are "purely conventional" computer functions. *Alice*, 134 S.Ct. at 2359 (quoting *Mayo*, 132 S.Ct. at 1298). Using a computer to search, retrieve data, organize that data, and present that data are all well-understood, routine, and conventional computer functions. *Id.* Like the claimed steps in *Alice*, each step of the claims of the '015 patent "does no more than require a generic computer to perform generic computer functions." *Id.*; *see also Planet Bingo*, No. 2013-1663, slip op. at 6 (applying *Alice* and *Mayo* to hold that the claims at issue are not patent-eligible where they merely recite generic and purely

conventional functions of storing, retrieving, and verifying a chosen set of bingo numbers against a winning set of bingo numbers).

When considered "as an ordered combination," the steps performed by the "configuration engine" add nothing that is not already present when the steps are considered separately. Like the method claims in *Alice*, the claimed steps in the '015 patent simply recite conventional computer functions of querying, obtaining and organizing data, and presenting that data. Nothing in these claimed steps purports to improve the functioning of the computer itself; nor do they effect an improvement in any other technology or technical field. All the "configuration engine" does is search for data, determine data, list data, and present data. Mere manipulation or reorganization of data is not an inventive concept. *CyberSource*, 654 F.3d at 1375.

Moreover, as stated previously, the '015 patent acknowledges that computers have long been used to facilitate sales. A373, col. 1:20-21 ("Over the past several years computers have been increasingly used in the sales industry."). The patent also makes clear that both selling goods from inventory and selling custom-ordered goods are fundamental economic practices that have commonly been facilitated by computers:

> In many instances, a sales representative will have the option of selling a product either from an existing inventory or by ordering the product customized to the particular needs and desires of the customer. A computer system may be used by the sales person to facilitate this process.

*Id.*, col. 1:36-40. As explained in *Alice*, the generic computer implementation of routine computer tasks does not supply the necessary inventive concept—especially where here the claimed process could be "carried out in existing computers long in use." 134 S.Ct. 2357 (quoting *Benson*, 409 U.S. at 67).

CWC cannot bootstrap so-called generic "solvers" in its proposed construction of "configuration engine" to create some sort of specialized device. The asserted claims do not recite any specificity as to how the "configuration engine" performs the otherwise routine computer tasks of querying, obtaining and organizing data, listing data, and presenting data. The claimed generic computer functions performed by the "configuration engine," even as construed by CWC to include "solvers," are "purely conventional." *Id.* at 2359 (quoting *Mayo*, 132 S.Ct. at 1298). As noted in *Alice*, the "use of a computer to *obtain data*, adjust account balances, and issue automated instructions … are 'well-understood, routine, conventional activities' previously known to the industry." *Id.*

at 2359 (emphasis added) (quoting *Mayo*, 132 S.Ct. at 1294).

Consequently, CWC's claim construction of "configuration engine,"

including so-called "solvers," fails to add any meaningful limitation, or

inventive concept.

Furthermore, CWC's argument that the computer provides an

inventive concept because it instantaneously performs tasks that might

take a human "days, weeks, or months" is misplaced. Br. at 13. CWC

confuses efficiency with patent eligibility. This Court has already made

clear that using a computer to simply accelerate a mental process does

not render it patent eligible. *Bancorp Servs.*, 687 F.3d at 1279.

Neither a generic computer nor routine computer functions

amount to the type of "inventive concept" required to transform an

abstract idea into patent-eligible subject matter. A straightforward

application of *Alice* and its precedent proves the claims of the '015

patent are not patent-eligible under 35 U.S.C. § 101.

## C.    CWC's Attacks On The District Court's Analysis Are Without Merit

CWC attacks the district court's analysis on several grounds.

None has any merit.

### 1.    The District Court Correctly Applied The Two-Step Framework Established In *Mayo* And Confirmed By *Alice*

CWC's argument that the district court applied the wrong

standard in analyzing the patent eligibility of the claims under Section

101 is a farce. The district court's analysis is entirely consistent with

the two-step test announced in *Mayo* and recently confirmed in *Alice*.

The district court stated the first step is to identify whether an abstract

idea is involved in the claim. This is the same first step as

the *Alice* analysis: "First, we determine whether the claims at issue are

directed to one of those patent-ineligible concepts." *Alice*, 134 S.Ct. at

2355. Next, the district court stated the second step is determining

whether there are meaningful limitations to a "non-routine" application

of the idea. This is entirely consistent with the second step in Alice:

"step two of this analysis [is] a search for an 'inventive

concept.'" *Id.* (quoting *Mayo*, 132 S.Ct. at 1294).

CWC also incorrectly contends that the district court did not apply
"the *Alice* analysis" when it concluded that "claim 1 *involves* the
abstract idea of inventory-based selling." Br. at 11 (citing A13). First, as
made clear by *Alice* itself, the test is *not* exclusively "the *Alice* analysis";
rather, it is the framework previously set forth in *Mayo* that *Alice*
affirmed. *Alice*, 134 S.Ct. at 2355. Second, CWC's distinction between
claims that "involve" an abstract idea and "applications" of such
concepts does not matter for the first step of the *Mayo* framework,
which asks whether the claims are drawn to an abstract idea—not its
application. The district court properly analyzed the claims under the
first step and found that they were "drawn to an abstract idea" and,
consequently, went to the second step of whether the claim contains
limitations that meaningfully tie that abstract idea to an actual
application of that idea. A13.

> **2.    The District Court's Finding That A Human
> Could Perform The Mental Steps Of The Claim
> With Pen And Paper Is Consistent With *Alice* And
> A Correct Application Of This Court's Precedent**

CWC's argument that the district court improperly rewrote the
claims by substituting a "human" for "configuration engine" lacks merit.
Br. at 13. CWC does not contest that, in fact, a human could perform

the steps of the claim. CWC instead contends that the district court's analysis was somehow "unauthorized" and ignored the "stated objectives of the disclosed embodiment" that it would take "days, weeks, and months … for a human to carry out the operations of the configuration engine." Br. at 13.

As noted above, using a computer to simply accelerate mental steps that a human can do with pen and paper does not render it patent eligible. *Bancorp Servs.*, 687 F.3d at 1279. Moreover, this Court—in a post-*Alice* decision—recently affirmed the patent-ineligibility of a claimed method of managing bingo because it "consist[ed] solely of mental steps which can be carried out by a human using pen and paper." *Planet Bingo*, No. 2013-1663, slip op. at 4 (non-precedential) (quoting *Planet Bingo*, 961 F.Supp. 2d at 851) (finding that like the claims in *Benson*, not only can the claimed steps be "carried out in existing computers long in use, but they also can be done mentally" (quoting *Benson*, 409 U.S. at 67)) (internal quotes omitted).

In short, the district court correctly concluded that the "configuration engine" does not add any "inventive concept" that meaningfully limits the claims. This is not only consistent with, but also

controlled by, the Supreme Court precedent in *Alice, Mayo*, *Benson*, *Bilski*, and *Flook*—all of which stand for the proposition that merely adding generic computer implementations of purely conventional computer functions do not provide the required "inventive concept" to transform an abstract idea to patent-eligible subject matter.

### 3. The District Court Correctly Rejected CWC's Characterization Of The "Configuration Engine" As "Specialized"

CWC's argument that the district court failed to address the "specialized" configuration engine is flat wrong. The district court rejected the "specialized" nature based upon CWC's own proffered broad construction of "configuration engine." A14. As noted above, the district court also correctly concluded that CWC's claim construction fails to add any meaningful limitation, or inventive concept, because the added elements in that construction already appear elsewhere in the claim language. A10.

Moreover, the district court correctly rejected CWC's attempt to rely upon the specification to create a meaningful limitation on the claims. Regardless of any detail found in the specification, "the important inquiry for a § 101 analysis is to *look to the claim*." *Accenture*

*Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) (emphasis added). In *Accenture*, this Court held that although the specification contained "very detailed software implementation guidelines," the claims were nonetheless invalid under Section 101 because the "claims themselves only contain[ed] generalized software components arranged to implement an abstract concept on a computer." *Id.*

In any event, the specification cannot create the required "inventive concept." Figure 2 shows the claimed "configuration engine" as nothing more than a black box (item 201) that is used with a processor and memory, which are required components of any general purpose computer. A365. The specification describes the "configuration engine" as simply some abstraction of unspecified hardware or software. A375, col. 6:4-8. Figures 4A, 4B, 6, 7, and 8 show flow charts of steps purportedly performed by the configuration engine, but these steps could also be performed mentally by a human or with pen and paper. A367-68, 370-72.

**4.    The District Court Correctly Found That The '015 Patent Claims Effectively Preempt The Idea Of Selling Products From Inventory.**

Finally, CWC's contention that the claims do not preempt the abstract idea and long-familiar economic practice of selling products from inventory is counter to precedent. CWC contends first that, "the claimed invention improved existing technology in the field of technology-enabled selling by introducing a solution to the problem of not knowing what configuration options are available in inventory." Br. at 21.

CWC's attempt to characterize its invention as specific to "technology-enabled selling" (*see id.*) is, as the district court correctly found, "illusory." A14-15, n.6 ("By the patent's own terms, [technology-enabled selling] is nothing more than using "computerized information and related technology … to facilitate a sales transaction.") (quoting A373, col. 1:29-35). CWC's argument that the claims of the '015 patent are directed to "technology-enabled selling" proves that they are nothing more than claims drawn to a generic implementation of selling. More importantly, *Alice* confirmed "the proposition that the prohibition against patenting abstract ideas cannot be circumvented by attempting

to limit the use of the idea to a particular technological environment."
134 S.Ct. at 2358 (quoting *Bilski*, 561 U.S. at 610-11).

CWC also summarily argues that the claimed method "is tied to a particular machine—namely, one with a particular configuration engine." Br. at 22-23. CWC thus contends that "[t]his is not just *any* generic computer system." Br. at 23. This is belied by the patent itself, which, as previously noted, expressly states that "*any* type of computer system may be used." A374, col. 4:15-16 (emphasis added).

CWC unconvincingly attempts to avoid the patent's disclosure of only a generic computer system by arguing that "the computer system employed for the invention must 'adequately support the designed functionality.'" Br. at 23 (quoting A374, col. 4:16-17). This argument also fails. As discussed above, all claimed functionality of the claimed "computer system"—querying, obtaining data, organizing data, and presenting data—are routine, conventional computer functions. CWC's argument is nothing more than saying its claimed generic computer does purely conventional computer functions. "Simply appending conventional steps, specified at a high level of generality," was not "*enough*" to supply an " 'inventive concept.' " *Alice*, 134 S.Ct. at 2357

(quoting *Mayo*, 132 S.Ct. at 1300, 1297, 1294). At bottom, a claim is not patent-eligible if it merely recites the implementation of an abstract idea on a computer. *Id.* at 2358 ("Stating an abstract idea while adding the words 'apply it with a computer' simply combines those two steps, with the same deficient result.")

CWC's last-grasp assertion that "there is no way to perform the methods recited in the present claims without the use of the specified configuration engine" is contradicted by the patent itself. Not only will "any type of computer system" work (A374, col. 4:15-16), but the patent also acknowledges that *both* human sales representatives *and* computers are well known to be able to sell products from existing inventory (A373, col. 1:36-40). The wholly-generic computer implementation in the '015 patent claims does not add any inventive concept or provide any practical assurance that the claimed process is more than a drafting effort designed to monopolize the abstract idea itself. *Alice*, 134 S.Ct. at 2358 (citing *Mayo*, 132 S.Ct. at 1297).[2]

---

[2] CWC's assertion of the '015 patent against an apparently limitless group of businesses that sell a wide variety of products from inventory conclusively demonstrates the lack of any meaningful limitation in the claims.

**D.    The Dependent Claims Recite Nothing That Adds An "Inventive Concept"**

CWC does not argue that anything in any of the asserted dependent claims adds an inventive concept that would suffice to transform the impermissible abstract idea of claim 1 to patent-eligible subject matter. As the district court correctly found—and as tacitly admitted by CWC—the additional limitations of a "user interface for the computer system" (claim 2) and "a remote computer system across a communication network" (such as the Internet) (claims 3, 4, 10, and 11) fail to provide the required inventive concept.

The "user interface" limitation in claim 2 is a purely conventional function of any computer system. Both it and the remote communication mediums (e.g., the Internet) in claims 3, 4, 10 and 11 provide nothing more than token post-solution activities that do not meaningfully limit the abstract idea of selling goods from existing inventory. *Bilski*, 130 S.Ct. at 3231; *see* A18 ("[P]resenting a list [of customization options] via a user interface, or through the internet, is a token post-solution activity that does not meaningfully limit the abstract idea of inventory-based selling."); *see also buySAFE*, No. 2013-1575, slip op. at 9 ("That a computer receives and sends the information

over a network—with no further specification—is not even arguably inventive."); *CyberSource*, 654 F.3d at 1370 (use of Internet to verify credit-card transaction does not add an "inventive concept" to abstract idea of verifying the transaction); *MySpace, Inc. v. GraphOn Corp*, 672 F.3d 1250, 1267 (Fed. Cir. 2012) (claim is not patent-eligible "simply because it is computer-implemented or invokes the use of the Internet").

Moreover, the remote communication medium limitation (including the Internet) is not necessary to, or even capable of, performing the claimed steps of receiving a product query, determining customization options and their availability in inventory, preparing a list of the customization options, and presenting the list. Consequently, the asserted dependent claims are directed to the same impermissible abstract idea as claim 1 and are, therefore, not patent-eligible under 35 U.S.C. § 101.

# CONCLUSION

For the foregoing reasons, the judgment of the district court

should be affirmed.

Respectfully submitted,

/s/ Todd G. Vare
TODD G. VARE
BARNES & THORNBURG LLP
11 S. Meridian Street
Indianapolis, IN 46204

**Attorney for Appellee The Finish Line, Inc.**


/s/ Mark P. Wine
MARK P. WINE
WILL H. MELEHANI
ORRICK HERRINGTON & SUTCLIFFE LLP
2050 Main St., Suite 1100
Irvine, CA 92614

**Attorneys for Appellees Dick's Sporting Goods, Inc., Forty Niners Football Company LLC, Helly Hansen (U.S.) Inc., Levi Strauss & Co., NFL Enterprises LLC, Spanx, Inc., and MLB Advanced Media L.P.**


/s/ Matthew M. Lubozynski
Matthew M. Lubozynski
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
(404) 815-6500

**Attorney for Appellee Tory Burch LLC**

/s/ Kevin W. Kirsch
KEVIN W. KIRSCH
JOHN M. MUELLER
BAKER HOSTETLER LLP
312 Walnut Street
Suite 3200
Cincinnati, OH 45202-4074
(513) 929.3413

BARRY E. BRETSCHNEIDER
BAKER HOSTETLER LLP
Washington Square
Suite 1100
1050 Connecticut Avenue, NW
Washington, D.C. 20036-5304
(202) 861.1500

**Attorneys for Appellee Hugo Boss Fashions, Inc.**

# United States Court of Appeals
# for the Federal Circuit

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.,* 2014-1336, -1338, -1339, -1340, -1341, -1342, -1343, -1344, -1345, -1346

## CERTIFICATE OF SERVICE

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by BARNES & THORNBURG LLP, Attorneys for Appellee, The Finish Line, Inc., to print this document.  I am an employee of Counsel Press.

On **September 9, 2014** counsel has authorized me to electronically file the foregoing **BRIEF FOR APPELLEES** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

Richard C. Weinblatt
**(Principal Counsel)**
Stamatios Stamoulis
STAMOULIS & WEINBLATT
LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone:  (302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

Tarek N Fahmi
ASCENDA LAW GROUP, PC
84 W Santa Clara St., Suite 550
San Jose, CA 95113
Telephone:  (408) 799-0612
tarek.fahmi@ascendalaw.com

*Counsel for Appellant Clear with Computers, LLC*

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

September 9, 2014                                    /s/ John C. Kruesi, Jr.
                                                    Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

　　1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

　　 X   The brief contains <u>6,156 </u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

　　_____ The brief uses a monospaced typeface and contains lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

　　2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

　　 X   The brief has been prepared in a proportionally spaced typeface using <u>MS Word 2013 </u>in a <u>14</u> point <u>Century Schoolbook </u> font or

　　_____ The brief has been prepared in a monospaced typeface using _____in a ___ characters per inch_____ font.

<u>September 9, 2014        </u>　　　<u>/s/ Todd G. Vare      </u>
Date　　　　　　　　　　　　　Todd G. Vare
　　　　　　　　　　　　　　　BARNES & THORNBURG LLP
　　　　　　　　　　　　　　　*Attorney for Appellee*
　　　　　　　　　　　　　　　*The Finish Line, Inc.*